CHRISTIAN HOTZ *et al.*

*v.*

EUGENE HOYT.

*Filed at Mt. Vernon November 5, 1890.*

1. INJUNCTION—*commissioners of highways—injury to adjacent land owner—ditches along a highway.* To justify a court of equity in enjoining the commissioners of highways from draining and improving a part of a road by ditches, at the suit of an adjoining land owner, not for want of power to make such ditches, or on the ground that the commissioners are about to act without authority of law, but on the ground that they are proposing to discharge their legal duty in such an unskillful manner as to damage such owner, the bill must show a very strong case, and it must be sustained by the proof. If the effect of the proposed action is left in doubt, the injunction will not be issued until the question of nuisance is determined by the actual use of the property.

2. The statute has clothed the commissioners of highways with the discretion of determining the best methods of improving the public roads, and such discretion will not be interfered with by a court of equity, unless it is clearly alleged and satisfactorily proved that they are about to abuse it, to the injury of third persons.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a bill for an injunction, by appellee, against appellants, filed in the circuit court of Madison county. The bill alleges that complainant is the owner in fee simple of the east half of the north-west quarter, and the west half of the north-east quarter, of section thirty (30), in township three (3), north, range five (5), west of the third principal meridian, situate in the county of Madison and State of Illinois; that the said land, being one-half mile in width from east to west, is bounded on the south by and lies north of a public road running east and west through the center of said section; that Christian Hotz, Christian Koch and Albert Luehm are the

commissioners of highways of said township, the said township being known as Helvetia township; that the said land adjoining and north of said road is low, the eastern half of said tract being the lowest; that the eastern half north of and adjoining said road, though low and wet, is fair, tillable land, and has been in cultivation for a great many years, and is now in cultivation, and in its present condition is worth $55 per acre; that the surface water from the west half of said land, and other lands to the north and west of the same, drains into a ditch crossing said public road southward from said west half of said tract, and flows naturally, through a hollow or branch, in a general southeasterly direction, until it unites with another branch at some distance south of said road, which said other branch flows from a general northeasterly direction, and the surface water from said eastern half of your orator's said land drains naturally toward the south or south-east, and is carried off by said branch flowing from the north-east, above mentioned; that between said two natural drains or branches, a short distance to the east of said western branch carrying off the surface water of said west half of said land, there is a hill or elevation, which said public road crosses, and which divides the east and west halves of said land, and upon said hill or elevation, north of said road, are the residence and other buildings belonging to your orator; that the said commissioners of highways threaten and are about to dig and construct a ditch along the north side of said road, south of your orator's said land, from said western branch or drain eastward through said hill or elevation to said eastern branch, thus changing the natural flow and force of said surface water from the west half of said land, and other lands to the north and west, and forcing the same to run directly east along the south line of your orator's land to its eastern limit, and until it reaches said eastern branch flowing from the north-east, as aforesaid. Your orator further represents, that in case the said commissioners carry out their said threat and purpose,

and said ditch is constructed and said water forced through it as contemplated, in addition to the fact that your orator will be, in effect, cut off from said public road by said ditch, large quantities of water will be forced upon and back on to the said east half of your orator's said land; that the said east half of said land is quite low, and, in fact, as your orator verily believes, almost or quite as low as the road-bed and land south of it, and said east branch, into which it is intended to force said water, has so little fall that in times of heavy rain it is incapable of carrying off such water as now naturally drains into it, and overflows frequently; that said east half is quite low and wet, and is drained, to some extent, by artificial ditches dug by your orator, and if said commissioners are permitted to carry their threats and intentions into execution, the water so unnaturally forced through said ditch will overflow, and render a large portion of said land, to-wit, about twenty acres, as your orator verily believes, totally unfit for cultivation and useless to your orator; that at present, and naturally, the said water coming from the west half of your orator's said land, and other lands to the north and west thereof, flows southeasterly across said road, as before stated, and the digging of said proposed ditch and turning said water as contemplated is not a work of public necessity, nor will it in any way, in your orator's judgment, improve said roadway, but, as your orator is informed and believes, the said commissioners are about to do said work simply at the instance of the owner of the land lying south of said road, through which said water now naturally runs, and for the sole purpose of turning said water off his said land; that the said commissioners have declared their intention and instructed their agent to proceed at once with said work and construct said ditch as aforesaid, and your orator has good reason to fear, and does fear, that said commissioners will carry their said intention and threat into execution, unless they are restrained by the injunction of this honorable court. The prayer is for an in-

junction restraining said commissioners "from proceeding in any way with the construction of said ditch."

The defendants filed their joint and several answer, admitting the ownership of said land in complainant, and that they are highway commissioners for said township; they admit the location of said road as alleged; they deny that said land is low, but admit that the east half is lowest, and that it is tillable; they deny that the surface water from the west half of complainant's land, and other lands to the north and west of the same, drains as stated in the bill; they deny that there is a hill, as stated in the bill, but admit an elevation of four inches at the highest point; they deny that they made or intended to make a ditch as stated; they deny that they intend to change the natural flow of water, as stated, or force the same into unnatural channels; they deny that in case said work is done it will cut complainant off from said road, or will damage and render unfit for cultivation twenty acres of said land or any part of the same, but on the contrary, they state that it will benefit his land; they deny that said work is not a work of public utility, but insist that the same is a work of great public utility, and they insist that the work will benefit the public and the lands of complainant, and deny that they have any motive but the public good, and conscientious discharge of their duty as highway commissioners, in their work as stated; they aver that for more than five years a ditch has been dug on the south side of said road, which carried off the water mentioned by the complainant in the same direction as complained of, and empties into the same branch.

To this answer the complainant filed a replication, and the cause was heard on oral and documentary proofs. A decree was rendered by the circuit court perpetually enjoining the defendants and their successors "from digging or constructing a ditch on the north side of the road running east and west through the center of section thirty (30), * * * through the hill or elevation separating the east half of the north-west

quarter and the west half of the north-east quarter of said section, in such a way as to change or cause to be changed the natural flow and direction of the water from the west and north-west of said hill or elevation, and cause the same to run eastwardly through said hill or elevation, and into the branch to the east of said land, flowing from the north-east, and known as the Hoffman branch."

Mr. A. W. METCALFE, for the appellants:

As a general rule, equity will not exercise jurisdiction to remove a nuisance until it is found to be such by a jury, either in an action at law or on an issue out of chancery. *Dunning* v. *Aurora,* 40 Ill. 481; *Bliss* v. *Kennedy,* 43 id. 67; *Town of Lake View* v. *Letz,* 44 id. 81.

To prevent a trespass, the bill must allege irreparable injury. *Goodell* v. *Lassen,* 69 Ill. 145.

Equity will not interfere, by injunction, for the purpose of controlling the action of public officers constituting inferior *quasi* judicial tribunals, such as boards of supervisors, commissioners of highways, and the like, on matters properly pertaining to their jurisdiction, nor will it review and correct errors in the proceedings of those officers, the proper remedy, if any, being at law, by writ of *certiorari.* So when commissioners of highways are, by law, intrusted with full jurisdiction over matters pertaining to changes in the roads, a court of equity will not interfere with the exercise of their discretion, unless a strong case of fraud or irreparable injury be shown. High on Injunctions, sec. 797, p. 473; *Moore* v. *Swedby,* 6 Johns. Ch. 28; *Mayor* v. *Miserole,* 26 Wend. 132; *Vandoser* v. *Major,* 9 Paige, 388; *Bouton* v. *Brooklin,* 15 Barb. 375; *Gillespie* v. *Bovas,* 23 id. 370; *Ugott* v. *Bates,* 40 N. Y. 164; 1 Dillon on Mun. Corp. sec. 94.

When persons or officers are acting within well recognized powers, or exercising a discretionary power, a court of equity has no jurisdiction, unless the power or discretion is being

manifestly abused. *Brush* v. *Carbondale,* 78 Ill. 75 ; *St. Clair County* v. *People,* 85 id. 397.

When there is a remedy at law, injunction should not be granted. *Beamcamp* v. *Putnam,* 34 Ill. 378 ; *Clingman* v. *Hopkie,* 78 id. 172 ; *Shufeldt* v. *Boehm,* 96 id. 560 ; *Douglass* v. *Martin,* 103 id. 25 ; *Clinton County* v. *Schuster,* 82 id. 137 ; *Long* v. *Barker,* 85 id. 431 ; *Barton* v. *De Wolf,* 108 id. 195.

Messrs. Happy & Travous, for the appellee :

It is only in cases where the court, after considering all the evidence, is still in doubt as to whether irreparable injury will be done or a nuisance result, that an issue to be tried by a jury will be directed. Where the evidence on either question is satisfactory to the court, an issue will not be granted. See 2 Story's Eq. Jur. secs. 927 e, 928, 929, 925, 926.

A court of equity has jurisdiction to interpose, by injunction, where public officers, under claim of right, are proceeding illegally to impair the rights or injure the property of individuals, or when it is necessary to prevent multiplicity of suits. *Smith* v. *Bangs,* 15 Ill. 399 ; *Bryan* v. *City of East St. Louis,* 12 Bradw. 390 ; *Thornton* v. *Roll,* 118 Ill. 350.

By irreparable injury is not meant such as is beyond the possibility of repair, or beyond possible compensation in damages, or necessarily great injury or great damage, but that species of injury, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other, and, because it is so large on the one hand or so small on the other, is of such constant and frequent recurrence that no fair or reasonable redress can be had in a court of law. *Wahle* v. *Reinbach,* 76 Ill. 322 ; *Commonwealth* v. *Railroad Co.* 62 Am. Dec. 372.

The remedy by injunction, in cases of improper diversion of surface water, is clearly established. *Hicks* v. *Silliman,* 93 Ill. 255 ; *Snell* v. *Buresh,* 123 id. 151 ; *Anderson* v. *Henderson,* 124 id. 164 ; *Peck* v. *Herrington,* 109 id. 611.

The maxim, "he who seeks equity must do equity," has no application to this case. The equity to be done must arise from the same matter from which appellee seeks equity. Again, the pleadings present no issue as to the width or boundary of the road, but admit its situation and position, relative to appellee's land, to be as stated in the bill. 6 Am. and Eng. Ency. of Law, p. 707, note 2; 1 Story's Eq. Jur. sec. 64 e, and note; *Finch* v. *Finch,* 10 Ohio St. 501.

This cause having been tried on its merits in the court below, without demurrer or objection, it is too late to urge in an appellate court that there was an adequate remedy at law. *Magee* v. *Magee,* 51 Ill. 500; *Bryan* v. *City of East St. Louis,* 12 Bradw. 390; *Dodge* v. *Wright,* 48 Ill. 382.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

We have carefully examined this record, and can not concur in the conclusion reached by the circuit and Appellate Courts. Obstruction of complainant's access to the road in question is not an element of this case. There is no allegation in the bill to support a decree on that ground. The dimensions of the ditch about to be dug are not stated, and the only allusion in the bill to any such obstruction is the statement, that "in addition to the fact that your orator will be, in effect, shut off from said public road by said ditch, large quantities of water," etc. No one will seriously contend that the bill could be maintained as one to enjoin the defendants from obstructing complainant's ingress and egress to his premises by means of said road.

Neither the allegations of the bill nor the evidence satisfactorily show that the work contemplated by the commissioners would have materially changed the flow of the water as it existed at the time the bill was filed, to the injury of appellee. It is admitted that long prior to that time the natural flow of the water from the west part of appellee's lands had been changed, and at that time flowed through a culvert across the

road a short distance west of the elevation described in the bill, and while it flowed at one time from the mouth of said culvert over the adjoining premises on the south, the proprietors of that land had for several years maintained a deep ditch along the south side of the road east to the Hoffman branch, and had also maintained a dam or levee at or opposite to the mouth of said culvert, thereby forcing the water coming from the north and west through said ditch on the south of the road, eastward. There is no allegation in the bill that it was the intention of appellants to dispense with said culvert. On the road in question the Hoffman branch is spanned by a bridge, south of which said south ditch empties into said branch, and north of which the ditch about to be made would have discharged its water.

It is difficult to determine, either from the bill or proofs, just what particular work or change in said road complainant sought to enjoin. One allegation is, "that defendants have declared their intention, and instructed their agent to proceed at once with said work." On the hearing he introduced as a witness the road overseer, and asked him, among other questions, the following:

Q. "What instructions did the commissioners give you about digging a ditch through there?

A. "They said to dig the ditch there, and put the culvert up in front of Hoyt's house; and if they had been two hours later it would have been done.

Q. "Were you to take up the old culvert?

A. "Yes, sir.

Q. "What were you going to do with that?

A. "I was going to put it in front of Hoyt's building.

Q. "You were then going to dig a ditch so as to carry the water clear through?

A. "Yes, sir.

Q. "You had commenced work?

A. "Yes, sir; I think I worked a day.

Q. "Why was that culvert to be changed?

A. "I don't know; I didn't inquire the reason."

This is the only evidence in the record as to what was about to be done when the injunction issued, and it shows that it was not the intention to confine the water from the west to the north ditch. The same quantity of water would have emptied into the Hoffman branch as before, the only difference being that it would have passed through two ditches instead of one; and if complainant's lands would have been overflowed more than before, it would have resulted from the insufficiency of the outlet at the said bridge.

It is insisted that the preponderance of the evidence shows that the intention of the commissioners was to remove the culvert near complainant's buildings, and confine all the water from the west to a north ditch. We think the best evidence of what they intended to do is the proof of what they ordered done and was being done when they were enjoined. But even on appellee's construction of the evidence, it must be conceded that the witnesses who testified *pro* and *con* as to whether or not damages would result to complainant by the contemplated change, based their opinions on the proof before them as to what that change was. A large number of these witnesses testified, on behalf of appellee, that, in their opinion, by the change, the overflow of appellee's lands near the said bridge would be increased, and he thereby damaged, and also that the change would not improve said road. An equally large number, and with as much intelligence, swear that no damage would so result, some of whom say that, in their opinion, the north ditch would benefit, rather than damage, appellee. These witnesses swear that the change would improve the road. It seems unreasonable to say, in the light of all the evidence, that the road would not be benefited by ditching and grading it. It is clear, from the allegations of the bill and the proof, that to be of public utility it must in some way be drained and graded. There is no evidence in this record showing that

the commissioners were not in good faith intending to accomplish that object by the contemplated change. They are public officers, charged by law with the duty of "keeping in repair and improving, as far as practicable, all roads and bridges in their town; to construct permanent roads, beginning where most needed, so far as they have the means; to cause work on roads to be done timely, and in accordance with the best known methods of road making, *by proper grading, and through draining, by tile or otherwise.*" 2 Starr & Curtis' Stat. chap. 21, sec. 2, p. 136.

The case made is not one of public officers proceeding illegally or without authority of law. The most that can, in any view of the evidence, be fairly claimed, is, that they were about to do a duty imposed upon them by law, in so unskillful a manner as to damage appellee, for which they would have been personally liable, as in *Tearney et al.* v. *Smith,* 86 Ill. 391. The question here is, does it appear, with sufficient certainty and clearness, that the work about to be done was so far improper, and that it would so far have resulted in injury to appellee, as to justify the interposition of a court of equity by injunction?

The rule laid down by Mr. Wood in his work on Nuisance, (sec. 788,) is quoted with approval in *Thornton* v. *Roll et al.* 118 Ill. 364, as follows: "But to entitle a party to relief in such cases, a very strong case must be made by the bill and sustained by the proof, as, if, on coming in of the answer, the fact of contemplated nuisance is fully denied, or if, upon the facts, there is a reasonable doubt of the effect of the erection, the injunction will be denied until the question of nuisance is determined by the actual use of the property." See, also, *Dunning* v. *City of Aurora,* 40 Ill. 486, and High on Injunctions, sec. 488, cited in said case; also, *Brush* v. *City of Carbondale,* 78 Ill. 74; High on Injunctions, sec. 1240, and cases cited in note 1.

That disputes and differences of opinion will arise between land owners adjoining public highways, as to the best methods of improving them, and as to whether injury will result to abutting lands by a particular improvement, is inevitable. Our statute has wisely clothed the commissioners of highways with the discretion of determining these questions, and unless it is clearly alleged and satisfactorily proved that they are about to abuse that discretion, to the injury of a third party, courts will not interfere. To sustain the decree of the circuit court, on the facts disclosed by this record, would establish a precedent for interfering with and obstructing highway commissioners in the discharge of their duties in making, improving and repairing public roads, whenever two or more adjoining land owners and their neighbors may disagree as to how the work should be done, or the probable effect of work about to be done, on adjacent lands.

The judgment of the Appellate Court will be reversed, and the cause remanded to the circuit court of Madison county, with directions to dismiss the bill at the costs of the complainant.

*Judgment reversed.*