## Canal Commissioners v. Village of East Peoria.

1. EQUITY PRACTICE—*Where Bill Fails to Show Grounds for Equitable Interference.*—Whenever a court of equity is called upon to pass upon a bill, and it appears to it that on the face of the bill there is no equity in it, and no sufficient grounds disclosed in it why a court of equity should interfere, the bill will be dismissed.

2. EQUITY PLEADING—*The Admission of Facts Well Pleaded Does Not Include Inferences or Statements as to the Law.*—The admission of facts well pleaded in a bill does not carry with it the admission of inferences from those facts, or of the law as set forth in the bill, but this court

Canal Commissioners v. Village of East Peoria.

must be able to say, from the law as it is, when applied to the facts well pleaded in the bill, that the effect of these facts will most likely be such that it would be inequitable for the court not to give the complainants equitable relief; and the court must construe the pleading most strongly against the pleader and consider all matters of fact of which it must take judicial notice.

3. DRAINAGE—*Changes in the Course of a Stream Made by a Municipality.*—Where municipal authorities, in making changes in the flow of water, so as to cause it to empty into the same natural water course as before, but at a different point. act in their best judgment for the benefit of their municipality, and in such a manner that the results will be, when fairly considered, beneficial to the municipality, such change of the flow of water will not be enjoined unless it will most likely produce a nuisance to those injuriously affected thereby.

4. JUDICIAL NOTICE—*The Law as to, Applied.*—In this case the court must take judicial notice that "Farm Creek," in its natural channel, emptied its waters and those of its tributaries and of the country drained by it, with all its accompanying sand and other alluvial matter, into the Illinois river at a point not very far from the point of discharge by the proposed new channel; that such matter never totally prevented navigation, and that appellee is a village incorporated under the general law of the State and clothed with all the power given such municipalities by our law.

**Injunction.**—Appeal from the Circuit Court of Tazewell County: the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the November term, 1897. Affirmed. Opinion filed June 3, 1898.

## STATEMENT OF THE CASE.

The complainants in the court below, on May 18, 1887, filed in that court the bill in this case, which was amended September 25, 1897, and in substance is as follows:

The complainants are the canal commissioners of the Illinois and Michigan canal, consisting of Clarence E. Snively, president, Howard Hilton, secretary, and F. M. Ryon, treasurer. That they are legally and duly appointed and qualified and are now acting as public officers of the State of Illinois for the purposes specified by law.

That as such canal commissioners they are legally vested with control and general management of the Illinois and Michigan canal, the property thereto belonging, the locks, dams and other improvements for the navigation of the Illinois and Little Wabash rivers in said State, and that such

control extends upon the Illinois river from Peru, Illinois, to a point 1,000 feet below the Copperas Creek lock, and it is made their duty to cause the said canal, locks, river and appurtenances to be kept in good and sufficient repair for navigation by water.

That the said Illinois river, between the points aforesaid, is a navigable stream, and is appurtenant to the said canal, locks and dams composing the improvement of the Illinois and Michigan canal, and that such river between the points aforesaid is kept and maintained in a navigable condition by the said canal commissioners, who have expended, and who do now annually expend, large sums of money in keeping the channel of said river in an unobstructed condition.

That the receipts of the Illinois and Michigan canal for navigation thereon depend very largely upon a free and unobstructed use of the said Illinois river for navigation, between the said points, and that whatever would impede navigation between the said points would thus result in irreparable injury to complainants.

That in the vicinity of the village of East Peoria, Tazewell county, Illinois, on the said Illinois river, about two miles therefrom, and between Peru and 1,000 feet below the said lock and dam at Copperas creek, the defendant, for the purpose of changing the course of Farm creek and for enlarging certain other creeks, constructing drains, ditches and levees, for the purpose of providing drainage for certain real estate in said county, is constructing and about to complete a certain artificial channel, 10,000 feet long and from 70 to 100 feet in width and of great depth, into which artificial channel it is proposed to turn the course of the said Farm creek and its tributaries, and the surface water of the surrounding country, and thereby to discharge the same into the said Illinois river, opposite the city of Peoria, at a point different and other than the natural place of discharge of the waters of said Farm creek.

That the said work is being performed by the said defendant with all possible speed, night and day and Sundays, and will probably be completed by the 18th and 19th day of May, 1897, and that for such reason the complainants will

have no time to give notice of the intended application for injunction.

That the Illinois river at the point last aforesaid is a navigable stream, at the ordinary stage of water, of from 500 to 600 feet in width.

That the artificial channel, so in process of construction, when completed will extend into the navigable channel of the river at right angles, and will discharge a vast amount of sand, soil, silt, sediment, debris and other alluvial matter into the same, and that the direct result of such discharge will be to create in the navigable channel of said stream a bank, bar or barrier, composed thereof, that will extend across the said navigable channel, and prove to be an obstruction that will prevent, retard and hinder the use of said river for the purpose of navigation, and will constitute an absolute impediment to the carrying trade of this State, for the conveyance and carrying of passengers and freight.

That as a result of the completion of said channel, and the discharge of the waters of said Farm creek and its tributaries, and the waters of the surrounding country, through the same into said river, as a necessary result in the time of heavy rains, in and upon the country so drained, by reason of the nature of the soil of said country, there would be conveyed through said channel and into the navigable channel of said river, in a very short time, so great a quantity of sand, soil, sediment, debris and other alluvial matter, as to prove a most serious obstruction, hindrance and impediment to the use of said river by the carrying trade of the State and to navigation thereon.

That as a result of the opening of said artificial channel and the discharge of the said waters therefrom into the said river, navigation, carrying trade and commerce will be obstructed, prevented and hindered by reason of a bar that will be produced in the navigable channel of said river, as above set forth.

That by reason of the formation of the said bank and bar, and the obstruction to the navigation of said river, irreparable injury will result to the navigable channel of said river, to the carrying trade and commerce of the State

and to the complainants, by affecting the use of the Illinois and Michigan canal in connection therewith, and the additional expense that will be entailed upon them, in maintaining a navigable channel at the point aforesaid, and that said irreparable injury would be permanent in its character.

That in the event of said bar being formed, a large expenditure of money would be required for dredging the said stream, so that navigation could be maintained upon the said river, and the relief thereby afforded would be temporary in its nature, and would have to be repeated from time to time as often as the bar should reform.

Prayer for relief, asking that the defendant may make answer, etc., that it may be ordered to desist from further prosecuting the said work, and from connecting, or attempting to connect the same with the Illinois river, and to refrain from and desist in attempting to discharge the said waters of the said Farm creek through the said artificial channel, or any other artificial channel, into the said Illinois river, and that the said defendant may be enjoined from performing the injurious acts above complained of, and that the complainants may have such other and further relief in the premises as the nature of its case may require.

The bill is sworn to, and has attached thereto the affidavit of Clarence E. Snively, for immediate injunction, without notice; also the affidavit of William Keough and Leon McDonald, which support the statement of facts in the bill.

Summons issued in said cause on May 24, 1897, returnable to the September term, 1897, of the court, and service was had on defendant June 4, 1897. Notice was served on defendant May 18, 1897, that application would be made for an injunction, to be heard before Hon. N. Green, one of the judges of that court, May 21, 1897; but no application was then made. Notice was given defendant of an intended application for an injunction, to be heard before Hon. L. D. Puterbaugh, another judge of that court, August 18, 1897. On this last notice, application and hearing for a temporary

injunction was had, and on August 31, 1897, Judge Puter-baugh denied the injunction.

On August 25, 1897, the defendant filed its answer to the bill in substance as follows:

Answers of defendant, filed August 25, 1897, alleged as follows, to wit : That the defendant is not advised of the official capacity of the complainants, except by the allegations of the bill, but calls for strict proof thereof; that the defendant is not advised, and neither admits nor denies that the complainants, as such pretended canal commissioners, are by law vested with the control and general management of the Illinois and Little Wabash rivers in said State, but defendant expressly denies that such jurisdiction, or any jurisdiction for any purpose whatever, extends over 1,000 feet above the lock at Lockport, upon the south branch of the Chicago river, to the termination of the canal basin at Peru, Illinois, and from thence upon the Illinois river to a point 1,000 feet below the Copperas creek lock, and expressly denies that the complainants have any jurisdiction or authority whatever, over the Illinois river, from a point 1,000 feet above the Copperas creek dam, to a point 1,000 feet below the dam at Henry, and denies that within the territorial jurisdiction aforesaid, it is made the duty of complainants to cause said canal, locks, river or appurtenances to be kept in good and sufficient repair and condition for navigation by water.

That the respondent admits that from Peru, Illinois, to a point 1,000 feet below Copperas creek dam in said State, the Illinois river is a navigable stream for the use of boats and commerce, but expressly denies that the same is within the territorial jurisdiction of the complainants, as alleged, or that the same is in any way appurtenant to any canal, locks and dams composing the pretended improvement of the Illinois and Michigan canal, or that the same is maintained and kept in a navigable condition by the complainants, as alleged. That defendant is not advised, save by the bill of complaint, nor does it deem it material, whether the said complainants have expended large sums of money for maintaining said river in a navigable condition, or whether

complainants now annually expend large sums of money in keeping the navigable channel of said river in an unobstructed condition for navigation, and calls for strict proof thereof.

Defendant alleges that the complainants have no money at their disposal which can lawfully be applied for the purpose of maintaining the said Illinois river in a navigable condition, nor are complainants charged with said duty.

That defendant is not advised as to the magnitude of the receipts of the Illinois and Michigan canal, for navigation thereon, nor to what extent such receipts are dependent upon an unobstructed use of said river between the points referred to in said bill, nor is defendant advised, nor does it believe that whatever would affect navigation by water upon said river between the points last aforesaid, would result in irreparable injury to complainants, by injuriously affecting navigation upon said canal, and calls for strict proof thereof.

That defendant is a municipal corporation as alleged; that it has recently improved and as hereinafter more particularly set forth, deepened, widened, and straightened the course and channel of certain creeks, to wit, Farm creek and Cole's creek, which from time immemorial have existed and flowed through the territory now comprised within the territorial limits of the said village, and beyond said village about one-half mile to the Illinois river, where Farm creek has from time immemorial discharged itself into said river, but expressly denies that it has changed or altered any other creeks, or constructed any ditches, drains or levees whatever, except those hereinafter mentioned and referred to, and further denies that in said improvement it has discharged the said water therefrom at a point different or other than the natural point of discharge, and further denies that the said improvement was made for the purpose or objects set forth in the said bill of complaint, but says that the improvements were made for the purpose of protecting property lying within said village from overflow from said creeks.

That the said village of East Peoria was duly organized

under the laws of the State of Illinois (in 1883 or 1884); that the territory now and then included therein, comprises about three square miles, and that the population thereof is about 1,000 people.

That the entire territory comprised within said village lies within the Illinois river valley, and within the basin of said creeks, Cole's creek being a branch of Farm creek; that said territory is mostly flat and somewhat low, being on an average about twenty-five feet above said river, at low water mark, but that back of said village, about a mile, the surface of the country becomes rough and rises into steep hill and gullies, wherein the said creeks have their source; that in ordinary times the amount of water in said creeks is not great and in places they frequently run dry, but by reason of the character of the country, in times of freshets, the waters thereof rise very rapidly; that for many years past, in the spring of the year, and at times of heavy rainfalls, the entire territory within said village has been subject to overflow from said creeks, and that they unite about the center of said village, and from thence are known as Farm creek.

That the said overflow from said creeks for many years has been so great as to seriously affect the comfort, health and lives of the inhabitants, and to cause serious injury to the streets, etc., of said village. That the question of guarding against the same has been a vital question to said inhabitants, and that in the latter part of 1896, in order to relieve against such overflow, and drain said territory, and to prevent said injuries, under the supervision of competent engineers, it undertook the improvement of said creeks for that purpose. That the scope and character of the same was to deepen, widen and straighten the channel of said creeks, through said village, and from thence to the mouth of said Farm creek, into the Illinois river, and that said improvement cost about $20,000, paid for by special assessment. That in making said improvement, the original and natural channel of said creek was followed, and where deviated from, it was with the object of straightening the same,

and that at no place was the original channel departed from more than a few feet. That the dirt excavated was used for embankments, and that no more country is drained than has always been drained through said creeks, the intention of such improvement being to prevent overflow upon the said village.

That as the river is neared the country becomes lower and flatter; that at a quarter of a mile the land is about fifteen feet above low water mark; that the said creeks would and still do cut various channels through this low ground in times of flood, while ordinarily they would flow through one channel; that in times past such last mentioned channel, since Illinois was settled, has not always been the same, but for twenty-five years the greater part of the time has been along the channel which was deepened and improved.

That the land along the river where said creek empties into said river, and above and below, for a long distance, belongs to Johnson L. Cole; that his title extends five hundred feet to the center of the stream, and that this improvement was made with his consent and approval, and that no deposit will be made in the navigable channel of said river.

That said work was performed with all possible speed, nights and days and Sundays.

That the work was completed to the Illinois river and connected therewith on or about May 20, 1897, and since then the waters have continued to flow through said channel into said river, and that the said work was done by contract with the defendant by Willis & Brothers.

That the Illinois river opposite the place where the said channel enters the said river is a navigable stream, at the usual depth of water, and that its width is 800 feet, and that above and below said point the river is used for navigation; that the navigable channel of said river does not exceed 50 to 100 feet, and that it is located on the opposite side of the river from the mouth of Farm creek, and at a distance of 500 feet therefrom.

Canal Commissioners v. Village of East Peoria.

Defendant denies that the said channel enters the river at an angle of ninety degrees, but says that it enters said river at an angle of forty-five degrees, and with the current of the river.

Defendant admits that there will be discharged through the said channel a vast amount of water, together with more or less sediment, sand, soil, debris and other alluvial matter, but denies that the same will be discharged into the navigable channel of said stream, and avers that at or near the same place there has always been a like discharge, as the natural and inevitable result of the existence of said creek, and that said deposit was not caused by respondent; that there will be no greater deposit by reason of said improvement than has always existed, or than was discharged before the said improvement was made.

Defendant admits, on information and belief, that there has always been a tendency to the formation of bars at the mouth of said Farm creek, where the same enters the Illinois river, and that such tendency will still exist, and that it is utterly impossible to prevent the same, but respondent expressly denies that such tendency has been increased by the said improvement, and asserts, upon the contrary, that it has been diminished, and that there is no reasonable ground to believe that the said sand, soil, etc., discharged from the said channel will extend into and across the navigable channel of said Illinois river, or that the same will ever prove an obstruction that will prevent, retard or hinder the use of said river, and denies that the same will constitute an absolute impediment and hindrance to the commerce of the State.

Defendant avers that the said improvement of Farm creek was fully completed and in use shortly after the filing of this bill, and has since then been in use, but defendant expressly denies that as a result therefrom, in time of heavy rains or freshets, or at other times, such great quantities of sand, soil, etc., have been or will be deposited or carried from said Farm creek into the navigable channel of said Illinois river, as to produce there any material bank or bar, or to

prove an impediment to the use of the river for commerce, or to produce a greater bar than would have been made by said creek without said improvement.

That although the said channel has been in use since shortly after the filing of this bill, that no such bar has been formed, or has navigation or carrying trade and commerce been in the least obstructed or hindered by reason of any bar or bank, or has the navigation of the said river been in any way affected, or will it be so affected.

Defendant denies that any bar, etc., has or will be formed because of the making of said improvement, and denies that the navigation and commerce of the State will in any way be obstructed or endangered, in the least degree, more by reason of the improvement than without it.

Defendant admits that said improvement was completed shortly after the filing of the bill herein, and the said waters discharged through said channel, but denies that navigation and commerce has been or will be obstructed, prevented or hindered by reason of any pretended bar or bank, as alleged, and expressly denies that any such bank has been or will be produced thereby in the navigable channel of said river

Defendant denies that any such bar will be formed, or that any obstruction to the commerce of the said State will result, or that any irreparable injury will result to the navigable channel of said river, or to the navigation thereof, or to the Illinois and Michigan canal, connected therewith, and denies that complainants could or would be put to any expense in maintaining a navigable channel in said river, or that irreparable injury, as alleged in said bill, would result.

Defendant denies that a bar would be formed, as alleged, or that a large expenditure of money would be required for dredging said stream, or for receiving sand, soil, etc., therefrom, so that navigation could be maintained thereon; denies that complainants have any right, charge or supervision over said river, or its navigation, at the point where the said artificial channel enters said river, or at any other point for many miles above or below, and that it will not be necessary, nor would complainants have the power, to

make repairs of the kind mentioned in said bill of complaint, or to interfere with the natural course of the river, or with the management of streams tributary thereto, and entering therein. That the complainants have no right to interfere with the defendant in the exercise of its corporate power, and that the said defendant has full power to make said improvement, and that by reason of said improvement no water will be carried through said channel into the said river, other than is naturally tributary thereto.

That if the result of making such improvement will be to form bars in the Illinois river, either in the navigable channel, or at any point, yet defendant has full power, right and authority to make said improvement in manner and form as it was made, and is lawfully entitled to maintain the same; that complainants have a full remedy at law; that there is a lack of equity apparent upon the face of the bill.

Defendant prays same advantage to complainants' bill as though it had pleaded, demurred or excepted to the many errors, etc., therein contained.

Defendant prays to be dismissed with its costs; and bill is sworn to.

This answer was amended September 25, 1897.

The defendant filed a general replication on September 25, 1897, and on that day the court heard an application for a temporary injunction based upon the bill with its amendment, the answer with its amendment, the affidavits attached to each, and the replication; also a cross-motion by the defendant to dismiss the bill for want of equity appearing on the face of the bill.

The court denied the application for the injunction, and on the cross-motion, dismissed the bill for want of equity, etc.

The complainants bring the cause to this court by appeal.

Chiperfield, Grant & Chiperfield, attorneys for appellants.

McCulloch & McCulloch, Page, Wead & Ross and T. N. Green, attorneys for appellee.

The court will take judicial notice that appellee is organized as a village under the general laws relating to cities and villages. R. S., Ch. 24, Sec. 6; City of Rock Island v. Cuinely, 126 Ill. 408.

Also that Farm creek runs through the village, which fact is also admitted by the bill. Harmon v. City of Chicago, 110 Ill. 400.

The chancellor will take judicial cognizance of that which is within the range of common observation and of the ordinary course of nature. 3 Green. on Ev., Secs. 269–71; Chicago, B. & Q. R. R. Co. v. Warner, 108 Ill. 538.

He will therefore take notice that Farm creek has always emptied into the Illinois river, that it has a tendency to carry solid matter into the stream, and that unless controlled it will have a tendency to fill up the channel and to create bars, etc. But he will also take notice that the volume of water flowing through the river has kept open the channel, which, from time immemorial, has made it a navigable stream.

Before a court of equity will interfere, a case of nuisance, as well as complainants' rights, must be clearly made out. 1 High on Inj., Sec. 766; State of Wisconsin v. City of Eau Claire, 40 Wis. 533.

If the case is doubtful, or where the object sought can as well be attained at law, the relief will be withheld. High on Inj., Secs. 760, 761, 766, 781.

Appellee has, therefore, a legal right to deepen, widen dock, cover, wall, alter or change its channel; to construct drains, levees, dykes, and to acquire land therefor, and to otherwise drain lands lying within its corporate limits. R. S., Ch. 24, Sec. 63, Cl. 30; Laws of 1885, 60; 1 S. & C. 860.

The last cited act constitutes it a drainage district. Village of Hyde Park v. Spencer, 118 Ill. 446.

In the exercise of its powers it is not confined to its own territorial limits, but when necessary may go outside. Callon v. City of Jacksonville, 147 Ill. 113; Maywood Co. v. Village of Maywood, 140 Ill. 216; Shreve v. Town of Cicero, 129 Ill. 226.

Canal Commissioners v. Village of East Peoria.

When a municipality is in the exercise of a legal right, a court of equity has no jurisdiction to interfere, except in case of an abuse of such power. Brush v. City of Carbondale, 78 Ill. 74; City of Mt. Carmel v. Shaw, 155 Ill. 37.

And the presumption is that it is acting within its powers. Harmon v. City of Chicago, 140 Ill. 374; Osborne v. Mayor, etc., of Mobile, 44 Ala. 493; Haskell v. New Bedford, 108 Mass. 217.

The right of navigation is subject to other rights of a public nature. Illinois R. Packet Co. v. Peoria Bridge Ass'n, 38 Ill. 467; Mississippi R. Br. Co. v. Lonergan, 91 Ill. 508.

And such rights may be delegated to municipal corporations. City of Chicago v. McGinn, 51 Ill. 266.

The right of the legislature to legislate concerning drainage is unlimited by any constitutional inhibition. Const., Art. IV, Sec. 31; 1 S. & C. 138; Blake v. People, etc., 109 Ill. 504; Kilgour v. Drainage Comrs., 111 Ill. 342.

By our motion to dismiss we admit only those matters that are well pleaded; that is, matters of fact and not the inferences either of fact or law that may be drawn from the same. 1 Daniell's Ch. Pr., 566-8, 3d Am. Ed.; Ibid, 581-5; Greig v. Russell, 115 Ill. 483; Ebersole v. First Nat. Bank of Morrison, 36 Ill. App. 267 (with cases cited); Newell v. Bureau County, 37 Ill. 253; Stow v. Russell, 36 Ill. 18; Mills v. Brown, 2 Scam. 549.

Mr. Justice Burroughs delivered the opinion of the Court.

The appellant presented to the court below its bill of complaint praying among other things for a temporary injunction against the appellee, and upon that court denying the temporary injunction and dismissing the bill for want of equity appearing on the face thereof, the appellant brings the cause to this court, and urges as grounds for reversal that the court below erred in dismissing the bill without a hearing on the merits, and that as the bill with its amendment and affidavits disclosed a good cause for an

injunction as prayed for, and the cross-motion to dismiss same, like a demurrer, admitted all the facts well pleaded in the bill, the court ought not to have dismissed it.

The claim made in the bill, with its amendment, is that the appellee was making and about to complete, a new channel for a stream known as " Farm Creek," so as to carry the waters thereof and of its tributaries and the surrounding country through said new channel into the Illinois river, instead of allowing it to go through the natural channel as heretofore, the new point of discharge being near the appellee village; and that the effect of this change, if not prevented by injunction, would be that said waters, discharging through the new channel, would bring with it a large quantity of debris, sediment, silt, sand, soil and other alluvial matter, and thereby create a bar in the navigable channel of said river at the said point of discharge, preventing the navigation of said river and creating a public nuisance.

There is no allegation in the bill or its amendment, that a larger quantity of water with its accompanying sand, soil, sediment, debris, or other alluvial matter, would be discharged through the new, than before flowed through the natural channel, nor any facts averred that show the obstruction to navigation would be any greater by reason of the discharge of the same throught the new, than was formerly occasioned by the flow through the natural channel.

The appellee, although it had answered the bill, closed the same as follows :

" And forasmuch as the said complainants have not by their said bill set out such a state of facts as in a court of equity entitles them to any relief,  *  *  *  this respondent prays that it may have the same advantage as to said bill as it might have had or taken by way of demurrer, plea or exception to the same for the many errors, uncertainties, and other imperfections therein contained."

The question of practice raised, we think, has, in this State, in the case of Winkler v. Winkler, 40 Ill. 179, and cases subsequently decided by our Supreme Court, been settled to be, that whenever the court is called upon to

adjudicate upon the bill, and it appears to it that on the face of the bill there is no equity in it, and no sufficient grounds disclosed in it why a court of equity should interfere, the bill will be dismissed. Edwards v. Beaird, Breese, 70; State Bank v. Stanton, 2 Gilman, 352; Puterbaugh v. Elliott, 22 Ill. 157; March v. Mayers et al., 85 Ill. 177.

We think the main question upon which the correctness or incorrectness of the decree entered by the court below in this cause turns, is, does the bill with its amendment show a state of facts from which the court could see that the acts of the appellee sought to be enjoined would most likely produce the nuisance claimed ?

The admission of the facts well pleaded in the bill, by the cross-motion of the appellee, does not carry with it the admission of the inferences of those facts, or of the law as set forth in the bill by the pleader, but this court must be able to say from the law as it is, when applied to the facts well pleaded in the bill, that the effect of those facts will most likely be such that it would be inequitable for the court not to give the complainant equitable relief. And in considering such facts well pleaded, the court must construe the pleading most strongly against the pleader; and also consider all matters of fact which the court must take judicial notice of.

In this cause the court must take judicial notice that "Farm Creek," in its natural channel, emptied its waters, and those of its tributaries and of the country drained by it, with all its accompanying sand, silt, and other alluvial matter, into the Illinois river at a point not very far from the point of discharge by the proposed new channel; that the actual effect thereof, while tending to form bars that disturb navigation on the river at the point of discharge, yet never totally prevented such navigation, since the river would, in times of high water especially, clean out and wash away such bars; also that the appellee is a village incorporated under the general law of the State, and is clothed with all the powers and authority given such municipalities by our law, under which it is thus incorporated.

We think the true rule that ought to govern courts in determining when to enjoin municipal authorities from making changes in the flow of water, so as to cause it to empty into the same natural watercourse as before, but at a different point, is that, when such authorities are, in so doing, acting in their best judgment for the benefit of their municipality, and so acting that if the work they are doing will be, when fairly considered, beneficial to such municipality, then such change of the flow of water will not be enjoined unless it will most likely produce a nuisance to those injuriously affected thereby. Hotz v. Hoyt, 135 Ill. 388, and the authorities cited therein.

Other questions are raised by counsel in their briefs and oral argument in this court, but we think that inasmuch as the bill does not aver such facts as compel the court to conclude that most likely the proposed change of the channel of Farm creek by the appellee, as set out in the bill, will cause it to carry into the Illinois river more water, sand, silt, etc., than before, we do not think the effect will most likely be as claimed, and for that reason alone, the court below was justified in dismissing the bill for want of equity appearing on its face. We therefore will not discuss or determine the other questions raised by counsel. The decree of the court below is affirmed.